THIRD DIVISION

No. 1-08-1821

| | | |
|---|---|---|
| AMERICAN SERVICE INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois |
| Plaintiff-Appellant, | ) ) | |
| | ) | No.  04 CH 3337 |
| v. | ) ) | |
| | ) | Honorable Daniel A. Riley, |
| CHINA OCEAN SHIPPING COMPANY (AMERICAS) INC., and INTERPOOL TITLING TRUST, | ) ) ) | Judge Presiding |
| | ) | |
| Defendants-Appellees | ) | |
| | ) | |
| (Frontline Transportation Corp., Vincent Zepeda, Kenneth Edward Lipski, Leisure Products Charter, Leisure Pursuits, Inc., Kenneth Allen Olson, Peter Penner, Irene Penner, Penner International Company, Ronald G. Sutfin, Carl Klemm, Inc., International Women's Association, Jane Hand, Marita Landa, Cecilia Ellis, Sonia Aladjem, Jeanette Notardonato, Olga L. Buenz, Irma Oppenheimer, Peggy Albert, Gordon Mark, Maria Mejia, Anita Yamada, Millicent Getz, Zarah Sobolski, Blovail Corp., Glaxo SmithKline, Appleton Papers, Inc., Midwest Recycling of Illinois, Yumi Ross, Nancy Knapp, Draga Vesseminovich, Carolyn Yelton, Barbara Mark, Ana Manglano, Diane Gottlieb, Unit Equipment Service of AG of Hamburg, Provena St. Joseph Hospital, State Farm Insurance Company d/b/a Isshi Yamada, Advocate Healthcare Systems, d/b/a Lutheran General Hospital, f/u/o Gordon Mark, Encompass Insurance Company a/s/o | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

No. 1-08-1821

Marita Landa, Encompass Insurance Company )
a/s/o Arthur and Peggy Albert, Encompass )
Insurance Company a/s/o Gordon and Barbara )
Mark, )
 )
Defendants). )

PRESIDING JUSTICE MURPHY delivered the opinion of the court:

On October 1, 2003, Vincent Zepeda was involved in a multivehicle accident, resulting in the deaths of eight people and injuries to many others. Twelve consolidated lawsuits were filed against Zepeda; his employer, Frontline Transportation (Frontline); and Interpool Titling Trust and China Ocean Shipping Company (COSCO), which the underlying lawsuits alleged owned, leased, maintained, and/or controlled the trailer hauled by Zepeda. Plaintiff, American Service Insurance Company, filed an interpleader action seeking to deposit the limits of Frontline's policy with the circuit court clerk. See 735 ILCS 5/2-409 (West 2006). Defendants Interpool Titling Trust and COSCO filed a counterclaim alleging breach of the duty to defend. The parties filed cross-motions for summary judgment. The trial court granted defendants' motion and denied plaintiff's, finding that plaintiff had a duty to defend defendants in the underlying action. The court awarded defendants attorney fees, costs, and interest totaling $1,074,676.86. On appeal, plaintiff argues that: (1) it had no duty to defend defendants because they were not insureds under the policy; (2) its interpleader action was proper; and (3) the award of attorney fees, costs, and interest was improper.

## I. BACKGROUND

### A. Underlying Actions

On July 24, 2004, John Buenz, as special administrator of the estate of Olga Buenz, deceased, filed a second amended complaint against Frontline, Zepeda, COSCO, and Interpool Titling Trust alleging negligence. Buenz alleged that on October 1, 2003, Frontline, by and through its agent, Zepeda, acted negligently when Zepeda drove a tractor-trailer into a minibus, causing the death of Olga Buenz.

John Buenz alleged that COSCO owned a leasehold on, maintained, and/or controlled the trailer that Zepeda was hauling. He similarly alleged that Interpool Titling Trust owned, maintained, or controlled the trailer. The complaint also alleged that defendants committed acts and omissions that contributed to the accident. These acts and omissions included defendants' permitting the trailer and/or container to be used and operated when they knew or should have known that it was not in a safe operating condition; permitting the trailer to be used and operated when they knew that it was not equipped with proper brakes; and failing to inspect and repair the trailer and its brakes. Buenz also alleged that Zepeda operated the trailer as COSCO's agent.[1]

A number of other complaints were filed alleging claims for personal injuries, wrongful death, and survival arising out of the October 1, 2003, accident. A total of 12 underlying actions were consolidated into 1 action pending in the circuit court of Cook County under case number 03 L 012014.

### B. Insurance Policy

---

[1] Defendants state in their brief that another underlying plaintiff named Albert alleged that Zepeda pulled the trailer as an agent of Interpool Titling Trust. However, the page of the record that defendants rely on does not support their claim.

No. 1-08-1821

Plaintiff issued automobile insurance policy No. 986057 to Frontline for the policy period June 12, 2003, through June 12, 2004. The policy provided as follows:

"The company will pay on behalf of the insured all sums, except for punitive or exemplary damages, which the insured shall become legally obligated to pay as damages because of A. bodily injury or B. property damage to which this insurance applies, caused by an accident and arising out of the ownership, maintenance or use or [*sic*] an owned vehicle or any temporary substitute automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent."

The policy states that "the company will not defend any suit after it has paid the applicable limit of its liability for the accident which is the basis of the lawsuit."

The policy further provides in relevant part:

"Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured;

(b) any partner or executive officer thereof, but with respect to a temporary substitute automobile only while such vehicle is being used in the business of the named insured;

(c) any other person while using an owned vehicle or a temporary substitute automobile with the permission of the named insured, provided

-4-

his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission;

(d) any other person or organization but only with respect to his or her liability because of acts or omissions of an insured under (a), (b) or (c) above."

The policy also provides that none of the following is an insured:

"(iii) any person or organization, other than the named insured, with respect to

(1) a motor vehicle while used with any trailer owned or hired by such person or organization and not covered by like insurance in the company (except a trailer designed or used with a four wheel passenger type vehicle and not being used for business purposes with another type motor vehicle), or

(2) a trailer while used with any motor vehicle owned or hired by such person or organization and not covered by like insurance in the company."

An exclusion to the policy reads, "This insurance does not apply (a) to liability assumed by the insured under any contract or agreement."

After Frontline hired Zepeda as a driver in August 2003, Frontline contacted its insurance broker to obtain coverage for Zepeda and his tractor-trailer. On August 28, 2003, Frontline's insurance broker sent a facsimile to the Buschbach Insurance Agency, an insurance producer for

American Insurance, requesting coverage for Zepeda's 1995 Freightliner, which had a vehicle identification number of 1FUYDMCB5SP547151. On September 3, 2003, Buschbach submitted the request to American Service. The request sought coverage effective August 28, 2003, for the Freightliner and an "undescribed trailer." An American Service policy endorsement shows that Zepeda was added as "Driver #25." Zepeda's Freightliner was added as "Vehicle #43" for an additional premium of $3,098. American Service also added a "non-owned trailer" as "Vehicle #44" for an additional premium of $1,201.

A schedule of additional insureds lists Interpool, Inc. as an additional insured. Defendants also produced Frontline's commercial insurance application and fax cover sheet. Pages 11 through 32 of the fax contained "additional insured endorsements" with "Sirius Insurance Company, Inc.," printed on the bottom. Page 11 of the fax consisted of an "additional insured endorsement" that named "Interpool Inc. & its affiliates & subsidiaries," "Interpool Titling Trust, Interpool Funding 2000 LLC, Interpool Acquisition LLC," and "Interpool Chassis Funding LLC" as insureds under the policy, "but only to the extent that person or organization qualifies as an 'insured' under the WHO IS AN INSURED provision contained in Section II of the Coverage Form."

C.  Equipment Interchange Agreement Between Frontline and COSCO

On February 24, 2004, COSCO requested a defense through correspondence to counsel for Frontline, plaintiff's named insured. COSCO sought coverage based, *inter alia*, on an equipment interchange agreement it had with Frontline for the use of containers, chassis, and

No. 1-08-1821

other equipment.[2]  Frontline, a trucking firm, was identified as the "acquiring carrier" in the agreement, and COSCO was referred to as "the Line."  The agreement, dated April 21, 2001, provided as follows:

"The Acquiring Carrier shall certify that it has in effect insurance with respect to its legal liability under the provisions of paragraph 3[f] of this agreement, with limits of no less than $250,000/$500,000 for Bodily Injury and $250,000 for Property Damage, or single limit Bodily Injury and Property Damage coverage of at least $1,000,000.  In addition, limits of no less than $25,000 in Motor Truck Cargo Insurance and $15,000 in Trailer Interchange Insurance."

It further provided:

"The Acquiring Carrier shall indemnify The Line against, and hold The Line harmless for any and all claims, demands, actions, suits, proceedings, costs, expenses, damages, and liability, including without limitation attorney's fees, arising out of, [in] connection with, or resulting from the possession, use, operation or returning of the equipment during all periods when the equipment shall be out of the possession of The Line."

_____

[2] COSCO filed a cross-claim against Frontline in the consolidated underlying action for breach of the indemnity agreement.  The trial court in the underlying action granted COSCO's motion for summary judgment.  This order was affirmed by both the appellate court and the supreme court.  See *Buenz v. Frontline Transportation Co.*, 368 Ill. App. 3d 10 (2006), *aff'd*, 227 Ill. 2d 302 (2008).

D. Interpleader Action

On February 24, 2004, plaintiff filed a one-count complaint for interpleader. It sought "to pay the entire policy limit of liability of $1,000,000.00 of the ASI policy to this Honorable Court for equitable distribution pursuant to 735 ILCS 5/2-409, in whole or in part, for each and every claim which has or might arise as a result of the above described incident." Further, "upon payment of the policy proceeds to this Honorable Court, ASI seeks the declaration of this Court that ASI has no further duty" under the policy, including the duty to defend Frontline or Zepeda.

On September 7, 2004, the trial court found that, while plaintiff "has relinquished all interest in the monies, [i]t will not be able to satisfy an obligation to any recipient of the funds; i.e., obtain a settlement or pay all or part of a judgment." The court concluded that "the deposit of funds with the Clerk of Court will not relieve it of any duty it has to any insured under the terms of the policy issued in this matter." The court granted plaintiff leave to file an amended complaint for declaratory judgment and interpleader.

On November 18, 2004, plaintiff filed a second amended complaint containing two counts. In count I, plaintiff sought to "unconditionally surrender any claim to the policy limits" by depositing the policy limit of $1 million to the court clerk for equitable distribution. In count II, plaintiff sought a declaration that COSCO was not an insured under the policy. On March 3, 2005, the trial court dismissed without prejudice count I and paragraph 20 of count II.

On March 30, 2005, Interpool Titling Trust (Interpool), as assignee of Trac Lease, Inc., was granted leave to intervene. Interpool and COSCO counterclaimed, alleging that plaintiff breached its duty to defend them. In its answer to defendants' counterclaim, plaintiff admitted

that "Interpool was an additional insured as to the vehicle listed on the Declarations page only, subject to the terms, conditions and exclusions of said Policy."

Plaintiff then filed a third amended complaint. In addition to counts I and II, which were substantially similar to those pled in the second amended complaint, the third amended complaint added count III, which sought a declaration that plaintiff did not have a duty to defend Frontline for amounts owed by Frontline to COSCO in connection with "any claims of breach of contract or breach of an indemnity agreement."

### E. Summary Judgment

In July 2006, plaintiff and defendants filed cross-motions for summary judgment. In its motion for summary judgment, plaintiff contended that COSCO was not an insured under the policy because (1) the trailer did not qualify as an "owned vehicle " or "temporary substitute automobile" under section II(c) of the policy, and (2) the trailer did not qualify under subsection II(d) because the trailer was being used for "business purposes" under the agreement between COSCO and Frontline.

Defendants argued in their motion for summary judgment that (1) the policy endorsements specifically added coverage for Interpool and the trailer that was involved in the accident, (2) they were insureds pursuant to the policy's definition of "persons insured," and (3) estoppel principles barred plaintiff from raising any policy defenses because it breached the duty to defend.

In its response to defendants' motion, plaintiff argued that only Interpool, Inc., and not Interpool Titling Trust, was a named additional insured under the policy. Plaintiff reiterated the arguments it made as to COSCO in its motion for summary judgment. It further contended that

COSCO and Interpool were excluded as insureds under section II(d). Plaintiff relied on the affidavit of Robert McKenna, its "litigation manager," who stated that he had "personal knowledge as to the claim that forms the basis of the instant lawsuit" and that defendants are not listed as additional insureds under the Frontline policy. He also stated that the trailers listed on the ASI policy "were additional trailers for additional insureds named on said ASI Policy only." Finally, McKenna stated that plaintiff only insured an additional insured named Interpool, Inc., and that it does not insure unlisted and undisclosed affiliates of named insureds. The trial court struck McKenna's affidavit.

On January 25, 2007, the trial court concluded that COSCO and Interpool qualified as "insureds" under the policy and that plaintiff was obligated to defend and indemnify them in the underlying cases. Therefore, it granted defendants' motion for summary judgment and denied plaintiff's. On August 17, 2007, the trial court denied plaintiff's motion to reconsider the September 7, 2004, order and to clarify the January 25, 2007, order. It also denied without prejudice plaintiff's motion for a Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)) finding as to the orders of September 7, 2004, and January 25, 2007.

## F. Attorney Fees

On March 12, 2007, defendants filed a petition for further relief pursuant to section 2-701(c) of the Code of Civil Procedure (735 ILCS 5/2-701(c) (West 2006)), claiming that plaintiff had failed to reimburse them for the attorney fees and costs they incurred defending the underlying action, despite the court's January 25, 2007, order providing that plaintiff had a duty to defend them. The court granted the motion and permitted defendants to file a petition for

attorney fees. In their petition, defendants argued that the fees were *prima facie* reasonable by virtue of the fact that the attorneys had been paid.

Plaintiff received extensions of time to respond to the petition, with a final due date of April 18, 2008. On April 1, 2008, plaintiff filed an emergency motion to strike the fee petition or, in the alternative, to compel defendants to comply with a deposition request. Plaintiff argued that on March 24, 2008, it noticed a deposition for April 1, 2008, for the person most knowledgeable of "all bills, invoices, and costs associated with the defense of COSCO and Interpool" in both the underlying action and the instant case. On April 2, 2004, the trial court quashed the notice of deposition and denied plaintiff's emergency motion. It also entered a protective order.

On May 28, 2008, the day before the scheduled hearing on defendants' fee petition, plaintiff filed an emergency motion to amend its response to the fee petition with the affidavit of its expert, John Hourihane, who stated that he was unable to render an opinion as to the reasonableness of defendants' fee petition without reviewing the attorney files.

On May 29, 2008, the trial court denied plaintiff's emergency motion to amend its response. It also granted defendants' fee petition, finding, "The Court has reviewed the billing that's in question. I'm able to note the detail set forth in the billing. I'm able to note that there is no dispute that the bills have been paid. I agree with counsel that it's a *prima facie* showing of reasonableness." The court ordered plaintiff to pay defendants $944,134.22 in attorney fees and costs and $130,542.64 in prejudgment interest and to pay future attorney fees, costs, and expenses as incurred in the ongoing defense of the underlying action.

The court found pursuant to Supreme Court Rule 304(a) that there was no just reason to

delay the enforcement or appeal of the May 29, 2008, judgment. On June 18, 2008, plaintiff voluntarily dismissed count III of its third amended complaint and filed its notice of appeal.

## II. ANALYSIS

### A. Duty to Defend

Summary judgment is appropriate when the pleadings, depositions, and other evidence reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2004). "Although a plaintiff is not required to prove his case at the summary judgment stage, in order to survive a motion for summary judgment, the nonmoving party must present a factual basis that would arguably entitle [him] to a judgment." *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). Summary judgment is a drastic means of resolving litigation and should only be allowed when the right of the moving party is clear and free from doubt. *Bier v. Leanna Lakeside Property Ass'n*, 305 Ill. App. 3d 45, 50 (1999). An appellate court's review of a grant of summary judgment is *de novo*. *Woods v. Pence*, 303 Ill. App. 3d 573, 576 (1999).

Our primary objective in construing the language of an insurance contract is to ascertain and give effect to the intent of the parties to the contract. *American Service Insurance Co. v. Pasalka*, 363 Ill. App. 3d 385, 389 (2006). Courts should construe an insurance policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*,

No. 1-08-1821

156 Ill. 2d 384, 391 (1993).  If the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning.  *Pasalka*, 363 Ill. App. 3d at 389.  Conversely, if the language in the policy is susceptible to more than one meaning, it is ambiguous and will be construed strictly against the insurer.  *Pasalka*, 363 Ill. App. 3d at 389.  Courts should not strain to find ambiguity in an insurance policy where none exists.  *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391.

An insurer's duty to defend, which is broader than its duty to indemnify, is generally determined by comparing the allegations of the underlying complaint against the insured to the language of the insurance policy.[3]  *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992); *American Country Insurance Co. v. James McHugh Construction Co.*, 344 Ill. App. 3d 960, 970 (2003).  In determining whether an insurer owes its insured a duty to defend, the court must look to the allegations of the underlying complaint in comparison to the relevant insurance policy provisions.  *Country Mutual Insurance Co. v. Hagan*, 298 Ill. App. 3d 495, 500 (1998).  If the facts alleged in the underlying complaint fall even potentially within the policy's coverage, the insurer is obligated to defend its insured, even if the allegations are groundless, false, or fraudulent.  *James McHugh Construction Co.*, 344 Ill. App. 3d at 970.  Because the insurer's duty to defend is broader than the duty to indemnify, it may be obligated to defend against causes of action and theories of recovery that are not in fact covered by the policy.

---

[3] Defendants alleged in their counterclaim, and continue to assert on appeal, that estoppel principles bar plaintiff from raising any policy defenses.  However, we decline to address this issue because the trial court did not make a finding as to estoppel.

No. 1-08-1821

*Illinois Masonic Medical Center v. Turegum Insurance Co.*, 168 Ill. App. 3d 158, 162 (1988).

Plaintiff argues that it had no duty to defend defendants in the underlying action because they were not "insureds" under the policy.

A schedule of additional insureds lists Interpool, Inc., as an additional insured. Plaintiff does not dispute that Interpool, Inc., is an additional insured under the policy. However, Interpool, Inc., was not involved in the underlying action relating to the October 1, 2003, accident. Plaintiff argues, therefore, that only Interpool, Inc., and not Interpool Titling Trust, a distinct entity, was a named additional insured under the policy.

Defendants cite Frontline's faxed commercial insurance application, which they attached to their summary judgment reply brief. Page 11 of the fax included an "additional insured endorsement" that named "Interpool Inc. & its affiliates & subsidiaries," "Interpool Titling Trust, Interpool Funding 2000 LLC, Interpool Acquisition LLC," and "Interpool Chasis Funding LLC" as insureds under the policy. "Sirius Insurance Company, Inc.," was printed on the bottom of the page. Defendants claim that Frontline previously had an insurance policy with Sirius, and when it applied for insurance coverage through American Service Insurance, Frontline gave plaintiff a list of additional insureds, which was a copy of the endorsements from its previous policy with Sirius. Plaintiff's "Commercial Auto Checklist for Setting Up and Separating Policies" reflects that the underwriter received and approved the application. Defendants contend that, together, these documents establish that "the parties unequivocally intended to have all the Interpool entities insured under the ASI Policy, including Interpool Titling Trust."

However, the additional insured endorsement for the ASI policy only lists Interpool, Inc.;

it does not list any of the other Interpool entities included in the Sirius endorsement. Further, the record includes printouts from Delaware's Secretary of State's office reflecting that Interpool, Inc., and Interpool Titling Trust are different entities: Interpool, Inc., is a corporation and Interpool Titling Trust is a trust company. Plaintiff also notes that Interpool Titling Trust filed its petition to intervene as assignee of Trac Lease, Inc., not as a named additional insured. Therefore, a question of fact exists as to whether Interpool Titling Trust, as assignee of Trac Lease, Inc., is a named additional insured under the ASI policy.

Defendants also contend that plaintiff made a judicial admission in its answer to the counterclaim that Interpool Titling Trust is an insured entitled to coverage under the policy. Paragraph 9 of defendants' counterclaim alleges, "The American Service Policy contains an Additional Insured endorsement, naming Interpool as an insured." Paragraph 19 alleges, "Interpool is an additional insured under the policy." In its verified answer to paragraphs 9 and 19, plaintiff stated that it "admits that Interpool was an additional named insured as to the vehicle listed on the Declarations page only." Defendants argue, therefore, that plaintiff cannot contest that Interpool Titling Trust is an insured entitled to coverage under the policy.

A judicial admission is a "deliberate, clear, unequivocal statement of a party, about a concrete fact, within the party's peculiar knowledge." *Rath v. Carbondale Nursing & Rehabilitation Center, Inc.*, 374 Ill. App. 3d 536, 538 (2007). A judicial admission has the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of that fact. *Porter v. City of Chicago*, 393 Ill. App. 3d 855, 864 (2009). Therefore, a judicial admission cannot be contradicted in a motion for summary judgment or at trial. *Rath*, 374 Ill. App. 3d at

No. 1-08-1821

538. "Whether evidence should be admitted on a conceded fact is subject to the trial judge's discretion." *Porter*, 393 Ill. App. 3d at 864, citing *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 462 (1992).

We first note that the trial court did not specifically determine that plaintiff made a judicial admission in its answer to the counterclaim. Further, it is significant that plaintiff admitted in its answer to the counterclaim that "Interpool," not "Interpool Titling Trust," was an insured under the policy. Given the controversy over whether Interpool Titling Trust, as assignee of Trac Lease, or Interpool, Inc., was an insured under the policy, we find that plaintiff did not make a "deliberate, clear, unequivocal statement *** about a concrete fact" (*Rath*, 374 Ill. App. 3d at 538) when it admitted only that "Interpool" was an additional insured. Indeed, the fact that defendants resort to adding the bracketed "[Titling Trust]" after "Interpool" in its quotes from the counterclaim and answer underscores how plaintiff's admission was not "deliberate, clear, [and] unequivocal."

This conclusion does not prohibit us from finding that both Interpool Titling Trust and COSCO were, nevertheless, insureds under the policy. Section II(d) of the policy provides that "[e]ach of the following is an insured ***: *** any other person or organization but only with respect to his or her liability because of acts or omissions of an insured under (a), (b) or (c) above." Frontline was the named insured under subsection II(a), and plaintiff admitted that Zepeda was also an insured. Defendants' liability in the underlying actions is based on Zepeda's negligent driving and maintenance of the trailer and Frontline's use of the trailer. Furthermore, Buenz alleged in the underlying action that Zepeda operated the tractor-trailer as an agent of

-16-

defendants. In both of these ways, defendants' liability stems directly from the actions of Zepeda and Frontline; therefore, defendants are "persons insured" under section II(d) of the policy.

Defendants rely on a "Schedule of Coverages and Premiums," which provided coverage, effective August 29, 2003, for Zepeda, "Driver #25," Zepeda's tractor, "Vehicle #43," and "Vehicle #44," a "non-owned trailer." Defendants contend, therefore, that the policy provides coverage for the trailer "interchanged by COSCO to Frontline." Plaintiff argues, however, that defendants have provided no evidence, such as an affidavit from a witness, to support their "giant leap of logic" that "Vehicle #44" was COSCO's trailer. Plaintiff also cites the affidavit of Robert McKenna, plaintiff's "litigation manager." McKenna stated that he had "personal knowledge as to the claim that forms the basis of the instant lawsuit" and that defendants are not listed as additional insureds under the Frontline policy. He also stated that the trailers listed on the ASI policy "were additional trailers for additional insureds named on said ASI Policy only."

The trial court struck McKenna's affidavit, a finding that plaintiff claims was erroneous. The sufficiency of an affidavit in support of a motion for summary judgment is determined under Supreme Court Rule 191(a) (210 Ill. 2d R. 191(a)). Rule 191 provides that affidavits in support of or in opposition to a motion for summary judgment must be made on the personal knowledge of the affiant and must not consist of conclusions, but of facts admissible in evidence, and must affirmatively show that the affiant could testify competently thereto. 210 Ill. 2d R. 191(a). The granting of a motion to strike a Rule 191 affidavit is within the sound discretion of the trial court. *Cincinnati Cos. v. West American Insurance Co.*, 287 Ill. App. 3d 505, 514 (1997).

The trial court properly struck McKenna's affidavit because it set forth the following

conclusions: (1) that the trailers listed on the ASI policy "were additional trailers for additional named insureds on said ASI Policy only"; (2) that plaintiff only insured an additional insured named Interpool, Inc.; and (3) that plaintiff does not insure unlisted and undisclosed affiliates of named insureds. As defendants point out, the affidavit attempts to decide for the court the definition of the term "insured." "Supreme Court Rule 191 is specific in mandating that affidavits not consist of conclusions but set forth facts admissible in evidence." *Northrop v. Lopatka*, 242 Ill. App. 3d 1, 8 (1993). It is also unclear whether McKenna has "personal knowledge," as required by Rule 191, of the insurance policy, its formation, or any other event at issue here, as he stated only that he has "personal knowledge as to the claim that forms the basis of the instant suit." Therefore, the trial court properly struck the affidavit, and we reject plaintiff's attempt to create an issue of fact by relying on it.

Plaintiff next argues that the trial court ignored the "qualifying language" in section II that excludes COSCO's trailer as an insured under the policy. The policy provided that none of the following is an insured: "(iii) any person or organization, other than the named insured, with respect to (1) a motor vehicle while used with any trailer owned or hired by such person or organization and not covered by like insurance in the company *** or (2) a trailer while used with any motor vehicle owned or hired by such person or organization and not covered by like insurance in the company." Plaintiff contends that because COSCO owned the trailer that was being pulled by the Frontline tractor, the trailer, which was not insured under the ASI policy, was specifically excluded from coverage. We concluded above, however, that the trailer was "covered by like insurance in the company." We further note that plaintiff collected an additional $1,201

No. 1-08-1821

for such coverage.

Finally, plaintiff argues that there is no evidence that Interpool Titling Trust ever demanded, or that plaintiff ever denied Interpool, coverage. It is well established that actual notice of a claim triggers the insurer's duty to defend. *Cincinnati Cos. v. West American Insurance Co.*, 183 Ill. 2d 317, 328 (1998). The supreme court held in *Cincinnati*, "[I]n order to have actual notice sufficient to locate and defend a suit, the insurer must know both that a cause of action has been filed [against its insured] and that the complaint falls within or potentially within the scope of coverage of one of its policies." *Cincinnati*, 183 Ill. 2d at 329-30. Thus, there are two "prongs" under *Cincinnati* to establish that an insurer had actual notice. *Home Insurance Co. v. United States Fidelity & Guaranty Co.*, 324 Ill. App. 3d 981, 992 (2001).

It is undisputed that plaintiff had actual notice of the October 1, 2003, accident almost immediately thereafter; the record contains an "automobile loss notice" dated October 6, 2003, for the accident in question. The record also includes a fax, dated November 17, 2003, from Dan Behling at ASI to what appears to be a law firm stating, "There are 3 lawsuits filed on this case already."

Further, Interpool, Inc., not Interpool Titling Trust, was listed as an additional insured on the policy, and Interpool Titling Trust did not seek a defense until it intervened and filed a counterclaim against plaintiff. See *Home Insurance Co.*, 324 Ill. App. 3d at 992. However, plaintiff cites no authority for its argument that it lacked actual notice that Interpool Titling Trust was an insured under the policy, so we consider it waived.

B. Interpleader

-19-

Next, plaintiff argues that the trial court erred in concluding that depositing the policy limits with the court clerk would not relieve plaintiff of its duty to defend. Plaintiff cites the policy language that the "company will pay on behalf of the insured all sums, except for punitive or exemplary damages, which the insured shall become legally obligated to pay as damages." The policy further provides that "the company will not defend any suit after it has paid the applicable limit of its liability for the accident which is the basis of the lawsuit."

Illinois cases have consistently held that an insurer cannot discharge its duty to defend by simply depositing policy limits with the court. See *Conway v. Country Casualty Insurance Co.*, 92 Ill. 2d 388 (1982); *American Standard Insurance Co. v. Basbagill*, 333 Ill. App. 3d 11 (2002); *Douglas v. Allied American Insurance*, 312 Ill. App. 3d 535 (2000). In *Conway*, the insurer argued that its payment of the policy limit to the claimant discharged it from its duty to defend. Our supreme court rejected the insurer's argument and held that "since the insurer's duty to defend its insured is not dependent upon a duty to indemnify, but arises from the undertaking to defend stated in the policy, an insured's payment to its policy limits, without more, does not excuse it from its duty to defend." *Conway*, 92 Ill. 2d at 394. The court continued:

"Our holding that an insurer cannot discharge its duty to its insured simply by making payments to the claimant to the extent of its policy's limits is clearly supported by the language of the policy here. *** [T]he policy provided that the insurer could terminate its obligation to defend and pay by payments to the policy's limits of 'any judgments or settlements.' The insurer here, of course, made no payment pursuant to a judgment or a settlement agreement." *Conway*, 92 Ill. 2d at

395-96.

Here, plaintiff made no payment pursuant to a settlement or judgment.

The policy in *Basbagill* was similar to the policy language here. In *Basbagill*, the insurance policy provided that the insurer " 'will not defend any suit after our limit of liability has been offered or paid.' " (Emphasis omitted.) *Basbagill*, 333 Ill. App. 3d at 13. The policy did not define the term "paid." *Basbagill*, 333 Ill. App. 3d at 16. The Second District concluded that "an insurer has not 'paid' money under a policy until the insurer has surrendered any claim to the money and in the process has fulfilled an obligation to the recipient." *Basbagill*, 333 Ill. App. 3d at 16. It noted that the circuit court in an interpleader action is not owed anything; "it merely holds the funds until they are delivered to their rightful recipient." *Basbagill*, 333 Ill. App. 3d at 18. "Thus, although plaintiff has delivered a check to the court, it has merely *deposited* the money there; it has not 'paid' anything yet." (Emphasis in original.) *Basbagill*, 333 Ill. App. 3d at 18. The insurer's delivery of the $40,000 policy limit to the circuit court "was merely an interim arrangement to cover whatever liability plaintiff *might* incur in the future." (Emphasis in original.) *Basbagill*, 333 Ill. App. 3d at 18. Accordingly, the court rejected the insurer's argument that it discharged its duty to defend by depositing the policy limits with the clerk of court. *Basbagill*, 333 Ill. App. 3d at 19.

Similarly, in *Douglas*, the policy provided that the insurer would pay on behalf of its insured "all sums which the insured shall become legally obligated to pay as damages" and that it "has no obligation to any insured after the applicable limits of the policy have been exhausted by payment." The Fifth District, interpreting both provisions of the policy, held that "in a lawsuit one

No. 1-08-1821

does not become 'legally obligated' until a judgment or settlement is reached between the parties."
*Douglas*, 312 Ill. App. 3d at 541. The insurer did not become "legally obligated to pay" just because it tendered the policy limits to the court, since a settlement had not been reached and a judgment had not been entered. *Douglas*, 312 Ill. App. 3d at 540. The court further noted "strong public policy arguments against allowing insurers to discharge their duty to defend by paying policy limits and then leaving the insured to fend for himself." *Douglas*, 312 Ill. App. 3d at 543.

We agree with plaintiff that the policy language in the instant case, that "the company will not defend any suit after it has paid the applicable limit of its liability for the accident which is the basis of the lawsuit," is similar to the policy language in *Basbagill*. Plaintiff argues that the court in *Basbagill* refused to relieve the insurer of its duty to defend based on the fact that the insurer's tender was conditional. As plaintiff's attempted tender in the instant case was unconditional, plaintiff argues that *Basbagill* actually supports its position that its policy's requirements have been met and plaintiff should be relieved of its duty to defend. We disagree. As in *Basbagill*, plaintiff has only delivered a check to the court; while plaintiff may deposit money with the court, it has not "paid" anything yet. Pursuant to the policy concerns explained in *Douglas*, we decline to interpret the language in plaintiff's policy as permitting plaintiff to deposit its policy limits in an interpleader action in order to be relieved of its duty to defend its insureds. Consequently, the trial court was correct to reject the interpleader. Therefore, under *Conway*, *Basbagill*, and *Douglas*, it is clear that plaintiff could not discharge its duty to defend by simply depositing the policy limits with the court, since the parties did not reach a settlement and a judgment was not

-22-

entered in the underlying cases, nor was the policy limit "paid" to anyone. The authority that plaintiff relies on does not compel a different result.

In *Zurich Insurance Cos. v. Raymark Industries, Inc.*, 118 Ill. 2d 23 (1987), the insurance policy relieved the insurer of its duty to defend after the applicable limit of its liability had been exhausted. *Zurich*, 118 Ill. 2d at 52-53. The court held that when "an insurer has properly exhausted its policy limits by the payment of judgments and/or settlements, it is no longer obligated to defend any actions against" the insured. *Zurich*, 118 Ill. 2d at 53. As there has been no judgment or settlement in this case, *Raymark* is of no assistance to plaintiff's position.

In *Country Mutual Insurance Co. v. Anderson*, 257 Ill. App. 3d 73 (1993), another case cited by plaintiff, two insurers settled an underlying personal injury suit and paid the plaintiff in the underlying suit the limits of their policies. After the settlement, two potential insureds tendered their defense of the same underlying action to the two insurers. The insurers denied the tender and filed a declaratory judgment action seeking a declaration that their settlement for policy limits discharged them from any further duty to defend or indemnify the potential insureds in the underlying suit. This court concluded that the insurers acted in good faith because the language of the policies "manifested the parties' intention to limit the duty to defend to the time before [the] policy limits were properly exhausted." *Anderson*, 257 Ill. App. 3d 80. However, in the instant case, unlike *Anderson*, the insurer did not exhaust its policy limits by paying a settlement or judgment to the plaintiffs in the underlying actions.

Plaintiff also relies on *Carolina Casualty Insurance Co. v. Estate of Studer*, 555 F. Supp. 2d 972 (S.D. Ind. 2008). The insurer in *Estate of Studer* attempted to interplead the $1 million

policy limit and obtain a declaration that its duty to defend its insureds ceased upon the payment of the interpleader funds. The insurance policy provided that the insurer's duty to defend ended when the applicable policy limits had been exhausted in the payment of judgments or settlements. *Estate of Studer*, 555 F. Supp. 2d at 976. The federal court concluded that the policy limit was exhausted because the insurer made a full surrender of its policy limits and conceded that the total value of all the claims it was obligated to pay exceeded to $1 million amount. *Estate of Studer*, 555 F. Supp. 2d at 978. The court noted that although the duty to defend is separate from the duty to indemnify, it is broader than the duty to indemnify in certain circumstances:

> " 'Where the insurer has exhausted its policy limits, \*\*\* the insurer *cannot* ultimately be obligated to defend the insured. Thus, the duty to defend is broader than the duty to indemnify only when the insurer has the potential obligation to indemnify. *But when, as here, the insurer has no potential obligation to indemnify, it has not duty to defend*.' " (Emphasis in original.) *Estate of Studer*, 555 F. Supp. 2d at 978-79, quoting *Raymark*, 118 Ill. 2d at 52.

The court found that the insurer had no potential obligation to indemnify further because it conceded that its liability exceeded its policy limits and unconditionally deposited the $1 million with the court. *Estate of Studer*, 555 F. Supp. 2d at 979.

In doing so, the district court's analysis mirrored the analysis in another district court case, *Caroline Casualty Insurance Co. v. Estate of Zinsmaster*, No. 1:06-CV-33-TS (N.D. Ind. October 30, 2007). The *Studer* court pointed out: "In *Zinsmaster*, as in our case, the insurance policy at issue provided that the contractual duty to defend ended when the policy limit had been

No. 1-08-1821

'exhausted by payment of judgments or settlements.' " *Estate of Studer*, 555 F. Supp. 2d at 978, quoting *Zinsmaster*, slip op. at 2. This is the policy language that our supreme court considered in *Conway*, holding that depositing funds in an interpleader action does not constitute "payment pursuant to a judgment or a settlement." *Conway*, 92 Ill. 2d at 396. *Estate of Studer* did not cite *Conway*. We are compelled to follow the holding of our supreme court rather than a district court case from Indiana. Further, unlike the insurer in *Estate of Studer*, plaintiff in the instant case did not provide defendants with a defense while the interpleader action was pending for several years. We also decline to follow *Abstract & Title Guaranty Co. v. Chicago Insurance Co.*, 489 F.3d 808 (7th Cir. 2007), as it applied Indiana law.

### C. Attorney Fees

Next, plaintiff makes numerous arguments regarding the trial court's grant of attorney fees, costs, and interest in the amount of $1,074,676.86. Generally, a trial court's decision to award attorney fees will not be reversed absent an abuse of discretion. *Peleton, Inc. v. McGivern's Inc.*, 375 Ill. App. 3d 222, 225 (2007).

Plaintiff's major argument on appeal relating to attorney fees is that the court granted them without an evidentiary hearing. Plaintiff cites *Bank of America National Trust & Savings Ass'n v. Schulson*, 305 Ill. App. 3d 941, 952 (1999), which held that the "reasonableness of fees is a matter of proof, and a party ordered to pay attorney fees has the right to conduct meaningful cross-examination on the issue." See also *6334 North Sheridan Condominium Ass'n v. Ruehle*, 157 Ill. App. 3d 829, 834 (1987). We note, however, that neither case was a declaratory judgment action concerning an insurer's duty to defend. Furthermore, defendants argue that

-25-

plaintiff did not have a right to an evidentiary hearing because "it presented nothing of substance in response to the Fee Petition and thus, ASI failed to show that any 'evidence' could or would be presented."

In awarding attorney fees, the trial court agreed with the argument posited by defendants that the fees were *prima facie* reasonable because they had been paid. The trial court ruled, "The Court has reviewed the billing that's in question. I'm able to note the detail set forth in the billing. I'm able to note that there is no dispute that the bills have been paid. I agree with counsel that it's a *prima facie* showing of reasonableness."

In the trial court, defendants cited *Taco Bell Corp. v. Continental Casualty Co.*, 388 F.3d 1069 (7th Cir. 2004). In *Taco Bell*, the insurer, having been found to have a duty to defend, argued that the insured overpaid the lawyers that represented it in the underlying litigation. Justice Posner noted:

"When Taco Bell hired its lawyers, and indeed at all times since, Zurich [has] vigorously den[ied] that it had any duty to defend--any duty, therefore, to reimburse Taco Bell. Because of the resulting uncertainty about reimbursement, Taco Bell had an incentive to minimize its legal expenses (for it might not be able to shift them); and where there are market incentives to economize, there is no occasion for a painstaking judicial review." *Taco Bell*, 388 F.3d at 1075-76.

The Seventh Circuit continued that although the insurance policy allowed the insurer to assume the insurer's defense, in which event the insurer would have "selected, supervised, and paid the lawyers" for the underlying litigation, "it declined to do so--gambling that it would be exonerated

from the duty to defend--with the result that" the insured selected the lawyers. *Taco Bell*, 388 F.3d at 1076. "Had Zurich mistrusted Taco Bell's incentive or ability to economize on its legal costs, it could, while reserving its defense that it had no duty to defend, have assumed the defense and selected and supervised and paid for the lawyers defending" the insured in the underlying litigation. *Taco Bell*, 388 F.3d at 1076. "We add that the duty to defend would be significantly undermined if an insurance company could, by the facile expedient of hiring an audit firm to pick apart a law firm's billing, obtain an evidentiary hearing on how much the insured's defense costs it had to reimburse." *Taco Bell*, 388 F.3d at 1077. See also *Knoll Pharmaceutical Co. v. Automobile Insurance Co. of Hartford*, 210 F. Supp. 2d 1017, 1025 (N.D. Ill. 2002) (the fact that the insureds incurred and paid all of the defense costs that they sought from the insurer "strongly implies commercial reasonableness of the fees, especially in light of the fact that ultimate recovery of the fees was uncertain because [the insurers] repeatedly refused to pay").

Plaintiff also argues that the claim for attorney fees was not ripe for adjudication because the fees continue to accrue. We reject plaintiff's suggestion that a trial court must wait until the conclusion of an underlying case before awarding the insured attorney fees. In *Insurance Co. of the State of Pennsylvania v. Protective Insurance Co.*, 227 Ill. App. 3d 360, 368-69 (1992), this court held that "[r]eimbursement for defense costs should be provided as they are incurred." We continued, "By the use of the term 'reimbursement' one does not mean that [an] insurer can withhold payment until the underlying action is over." *Protective Insurance Co.*, 227 Ill. App. 3d at 368-69.

Plaintiff also argues that the court granted fees dating from November 7, 2003, even

No. 1-08-1821

though COSCO did not tender its defense to ASI until February 4, 2004, and plaintiff was not aware of Interpool Titling Trust's claim until it filed its petition to intervene. Because plaintiff fails to cite any authority in support of its argument--even *Cincinnati*--we find this argument waived. 210 Ill. 2d R. 341(h)(7); *Lopez v. Northwestern Memorial Hospital*, 375 Ill. App. 3d 637, 648 (2007) (when an appellant seeks reversal, theories presented without authority are deemed waived).

Next, plaintiff argues that the trial court did not give it sufficient opportunity to conduct discovery on the reasonableness of defendants' fee petition. Plaintiff failed to cite authority in support of its argument, including any authority establishing this court's standard of review of a trial judge's decisions regarding discovery or demonstrating that plaintiff was entitled to discovery. See *Regency Commercial Associates, LLC v. Lopax, Inc.*, 373 Ill. App. 3d 270, 285 (2007) (rulings with regard to discovery are subject to the abuse-of-discretion standard of review). Therefore, plaintiff has, again, waived this argument. *Lopez*, 375 Ill. App. 3d at 648.

Plaintiff also argues that the court awarded fees for ordinary office expenses, which are not recoverable, and for prosecuting the cross-complaint that COSCO filed against Frontline in the underlying action. It further contends that the fees awarded were not reasonable because Frontline, the primary defendant in the underlying actions, billed only $88,236. We also deem these arguments waived. To support a claim of error, the appellant has the burden to present a sufficiently complete record. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005). Without an adequate record preserving the claimed error, the reviewing court must presume the trial court had a sufficient factual basis for its holding and that its order conforms with the law.

-28-

No. 1-08-1821

*Corral*, 217 Ill. 2d at 157. While the notice of filing plaintiff's fee petition is in the record, the record does not include the actual petition or the supporting invoices, which have been variously described as consisting of 600 pages and being 3 inches thick. This court is unable to evaluate whether the trial court abused its discretion in awarding these fees when neither the petition nor the supporting billing records are included in the record. *Corral*, 217 Ill. 2d at 157. Accordingly, we affirm the trial court's grant of attorney fees, costs, and interest in the amount of $1,074,676.86.

III.  CONCLUSION

The trial court's orders are affirmed.

Affirmed.

QUINN and COLEMAN, JJ., concur.

| Please Use Following Form: | |
|---|---|
| Complete TITLE of Case | AMERICAN SERVICE INSURANCE CO., |

Plaintiff-Appellant,

v.

CHINA OCEAN SHIPPING COMPANY (AMERICAS) INC., and INTERPOOL TITLING TRUST,

Defendants-Appellees

(Frontline Transportation Corp., Vincent Zepeda, Kenneth Edward Lipski, Leisure Products Charter, Leisure Pursuits, Inc., Kenneth Allen Olson, Peter Penner, Irene Penner, Penner International Company, Ronald G. Sutfin, Carl Klemm, Inc., International Women's Association, Jane Hand, Marita Landa, Cecilia Ellis, Sonia Aladjem, Jeanette Notardonato, Olga L. Buenz, Irma Oppenheimer, Peggy Albert, Gordon Mark, Maria Mejia, Anita Yamada, Millicent Getz, Zarah Sobolski, Blovail Corp., Glaxo SmithKline, Appleton Papers, Inc., Midwest Recycling of Illinois, Yumi Ross, Nancy Knapp, Draga Vesseminovich, Carolyn Yelton, Barbara Mark, Ana Manglano, Diane Gottlieb, Unit Equipment Service of AG of Hamburg, Provena St. Joseph Hospital, State Farm Insurance Company d/b/a Isshi Yamada, Advocate Healthcare Systems, d/b/a Lutheran General Hospital, f/u/o Gordon Mark, Encompass Insurance Company a/s/o Marita Landa, Encompass Insurance Company a/s/o Arthur and Peggy Albert, Encompass Insurance Company a/s/o Gordon and Barbara Mark,

Defendants).

Nos. 1-08-1821
Appellate Court of Illinois
First District, THIRD Division

June  16, 2010
(Give month, day and year)

PRESIDING JUSTICE MURPHY delivered the opinion of the court:

Quinn and Coleman,  JJ.,                                                                concur [s]

Lower Court and Trial Judge(s) in form indicated in the margin:

The Honorable        Daniel A. Riley                              , Judge Presiding.

Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel.  Indicate the word NONE if not represented.

Attorneys for **Plaintiff-Appellant:**    Newman Raiz LLC
20 S. Clark Street, Suite 1510
Chicago, IL  60603
Phone:  (312) 580-9000

Attorneys for **Defendants-Appellees**:    Schuyer Roche & Crisham, P.C.
China Ocean Shipping Co. (Americas), 130 E. Randolph Street, Suite 3800
Inc., Interpool Titling Trust            Chicago, IL 60601
Phone: (312) 565-2400

Attorneys for **Defendants-Appellees**:    Corboy & Demetrio, P.C.
Randall Ellis, Ind. Adms Est of Ellis;    33 N. Dearborn Street, Suite 2100

Margin labels:
Docket No.
COURT
Opinion Filed
JUSTICES
APPEAL from the Circuit Ct. of Cook County, Criminal Div.
For APPELLANTS, John Doe, of Chicago.
For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)

Landa, Ind Adms of Estate of Marita     Phone:  (312) 346-3191
Landa; Maria Mejia; Vince Notardonato,
Ind. Adms. of Esatate of J. Notardonato;
Zarah Sobolski

Attorneys for **Defendants-Appellees**:     Cooney & Conway
Norman Aladjem, Executor of Estate of 120 N. La Salle Street, 30th Floor
Sonjia Aladjem                              Chicago, IL  60602
                                            Phone:  (312) 236-6166

Attorneys for **Defendants-Appellees**:     Querrey  & Harrow
State Farm Mutual Insurance                 175 W. Jackson, Suite 1600
                                            Chicago, IL  60604
                                            Phone:  (312) 540-7000

Attorneys for **Defendants-Appellees**:     Clifford Law Offices
Todd J. Kuoni, Co-Special Adm for     120 N. La Salle Street, 31st Floor
Est. of Jane K. Hand; Charles F. Chicago, IL 60602
Kuoni Co- Special Adm for Jane K.     Phone: (312) 899-9090
Hand